# 23-7386-cv

## United States Court of Appeals
### *for the*
## Second Circuit

BRIDGEPORT MUSIC INC., WESTBOUND RECORDS, INC.,

*Plaintiffs-Counter-Defendants-Appellees,*

— v. —

TUFAMERICA INC., D/B/A Tuff City Records, KAY LOVELACE TAYLOR,
Individually and on behalf of the Estates of LeBaron Taylor,

*Defendants-Counter-Claimants-Appellants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR PLAINTIFFS-COUNTER-DEFENDANTS-APPELLEES

RICHARD S. BUSCH
KING & BALLOW
*Attorneys for Plaintiffs-Counter-*
  *Defendants-Appellees*
26 Century Boulevard, Suite NT 700
Nashville, Tennessee 37214
(615) 259-3456

CP COUNSEL PRESS    (800) 4-APPEAL • (329061)

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Appellees Bridgeport Inc. and Westbound Records, Inc. state that they are Michigan corporations. They have no parent company, and no publicly held company holds more than ten percent of either's stock.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................... ii

STATEMENT OF THE ISSUES ......................................................... 1

PRELIMINARY STATEMENT ........................................................ 2

LEGAL STANDARD ...................................................................... 11

SUMMARY OF THE ARGUMENT ................................................ 12

ARGUMENT .................................................................................. 13

    I.    THE DISTRICT COURT CORRECTLY CONCLUDED
        APPELLANTS' COUNTERCLAIMS WERE TIME
        BARRED ................................................................................ 13

        A.    Mr. Taylor Had Notice As To Appellees' Adverse
             Claims of Copyright Ownership ............................... 15

        B.    TufAmerica Had Notice As To Appellees' Adverse
             Claims of Copyright Ownership ............................... 20

    II.   THE RECORD PROVIDES ALTERNATIVE GROUNDS
        TO AFFIRM THE DISTRICT COURT'S DISMISSAL OF
        APPELLANTS' COUNTERCLAIMS ............................... 24

    III.  THE DISTRICT COURT CORRECTLY CONCLUDED
        APPELLEES' CLAIMS WERE TIMELY ........................ 28

CONCLUSION ............................................................................... 32

### TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*AMTRAK v. McDonald*,
  779 F.3d 97 (2d Cir. 2015) ....................................................24

*Avery v. Estate of Avery*,
  192 A.3d 1250 (Vt. 2018) ....................................................27

*Benak v. All. Capital Mgmt. L.P.*,
  435 F.3d 396 (3d Cir. 2006) ....................................................22

*Boal v. Metro. Museum of Art*,
  298 F. 894 (2d Cir. 1924) ....................................................27

*Bridgeport Music, Inc. v. Rhyme Syndicate Music*,
  376 F.3d 615 (6th Cir. 2004) ....................................................14

*Brown v. N.Y. City Dep't of Educ.*,
  755 F.3d 154 (2d Cir. 2014) ....................................................20

*Carell v. Shubert Org., Inc.*,
  104 F. Supp. 2d 236 (S.D.N.Y. 2000) ....................................................16

*Chassman v. Shipley*,
  695 F. App'x 630 (2d Cir. 2017) ....................................................11

*Cole v. Blackwell Fuller Music Publ'g, LLC*,
  No. 16-CV-7014 (VSB), 2018 U.S. Dist. LEXIS 168186
  (S.D.N.Y. Sep. 28, 2018) .................................................... 16, 17, 18

*Cortner v. Israel*,
  732 F.2d 267 (2d Cir. 1984) .................................................... 26, 28

*Davidson v. Scully*,
  172 F. Supp. 2d 458 (S.D.N.Y. 2001) ....................................................23

*Davis v. Meridian Films. Inc.*,
  14 Fed. App'x 178 (4th Cir. 2001) ....................................................14

*Derblom v. Archdiocese of Hartford*,
  247 A.3d 600 (Conn. Ct. App. 2021) ....................................................27

*Empire Tr. Co. v. United States*,
  226 F. Supp. 623 (S.D.N.Y. 1963) ....................................................27

ii

*Estate of Tilyou v. Commissioner*,
   470 F.2d 693 (2d Cir. 1972) ........................................................ 26, 27

*Ferrarini v. Irgit*,
   2021 U.S. Dist. LEXIS 29619 (S.D.N.Y. Feb. 17, 2021) ....................................31

*Fletcher v. Atex Inc.*,
   68 F.3d 1451 (2d Cir. 1995) ........................................................30

*Gary Friedrich Enters., LLC v. Marvel Characters, Inc.*,
   716 F.3d 302 (2d Cir. 2013) ........................................................ 15, 19

*Golden Pacific Bancorp v. F.D.I.C.*,
   273 F.3d 509 (2d Cir. 2001) ........................................................11

*Hartmann v. Amazon.com, Inc.*,
   No. 20 Civ. 4928 (PAE), 2021 U.S. Dist. LEXIS 157035
   (S.D.N.Y. Aug. 19, 2021) ........................................................11, 28

*Hicks v. Baines*,
   593 F.3d 159 (2d Cir. 2010) ........................................................30

*Hoffman v. McGinnes*,
   277 F.2d 598 (3d Cir. 1960) ........................................................27

*In re Herrmann's Estate*,
   82 N.Y.S. 2d 888 (Surr. Ct. 1948) ........................................................26

*In re Neil*,
   144 N.E. 481 (N.Y. 1924) ........................................................27

*Int'l Media Films, Inc. v. Lucas Entm't, Inc.*,
   703 F. Supp. 2d 456 (S.D.N.Y. 2010) ........................................................ 24, 25

*Jim Henson Prods. v. John T. Brady & Assocs.*,
   92 Civ. 5115 (LAP), 1997 U.S. Dist. LEXIS 22878
   (S.D.N.Y. Oct. 6, 1997) ........................................................31

*Kwan v. Schlein*,
   634 F.3d 224 (2d Cir. 2011) ........................................................ 19, 20

*Latin Am. Music Co. v. Spanish Broad. Sys.*,
   738 Fed. App'x 722 (2d Cir. 2018) ........................................................11

*Mahan v. Roc Nation, LLC*,
   No. 14 CIV. 5075LGS, 2015 U.S. Dist. LEXIS 49684,

2015 WL 1782095 (S.D.N.Y. Apr. 15, 2015), *aff'd* 634 Fed. App'x 329
(2d Cir. 2016) ................................................................................... 16, 18

*McKinney v. City of Middletown*,
49 F.4th 730 (2d Cir. 2022) ...............................................................20

*Miller v. Wolpoff & Abramson, L.L.P.*,
321 F.3d 292 (2d Cir. 2003) ...............................................................11

*Opal Fin. Grp., Inc. v. Opalesque, Ltd.*,
No. 3:08-CV-1403, 2014 U.S. Dist. LEXIS 155434
(D. Conn. Nov. 3, 2014) .....................................................................20

*Ortiz* v. *Guitian Bros. Music Inc.*,
2008 U.S. Dist. LEXIS 75455, (S.D.N.Y. Sep. 24, 2008) ...................16

*Palmieri v. Lynch*,
392 F.3d 73 (2d Cir. 2004) .................................................................29

*Petrella v. MGM*,
572 U.S. 663 (2014) ...........................................................................14

*Phx. Light SF, Ltd. v. U.S. Bank Nat'l Ass'n*,
No. 14-CV-10116 (VSB), 2020 U.S. Dist. LEXIS 144731
(S.D.N.Y. Aug. 12, 2020) .............................................................. 19, 23

*Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC*,
477 F.3d 383 (6th Cir. 2007) ..............................................................14

*Seven Arts Filmed Ent. Ltd. v. Content Media Corp. PLC*,
733 F.3d 1251 (9th Cir. 2013) ....................................................... 7-8, 18

*Shrader v. CSX Transp. Inc.*,
70 F.3d 255 (2d Cir. 1995) .................................................................23

*Stanley Works v. FTC*,
469 F.2d 498 (2d Cir. 1972) ...............................................................20

*Thyroff v. Nationwide Mut. Ins. Co.*,
460 F.3d 400 (2d Cir. 2006) ...............................................................11

*Tolbert v. Queens Coll.*,
242 F.3d 58 (2d Cir. 2001) .................................................................29

*Triodetic Inc. v. Statue of Liberty IV, LLC*,
582 Fed. App'x 39 (2d Cir. 2014) ................................................ 19, 23, 29

iv

*United States v. All Right*,
2012 U.S. Dist. LEXIS 127835 (S.D.N.Y. Sep. 7, 2012) .....................................29

*United States v. Wasylyshyn*,
979 F.3d 165 (2d Cir. 2020) .................................................................. 11-12

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
396 F.3d 96 (2d Cir. 2005) .........................................................................12

*Weyant v. Okst*,
101 F.3d 845 (2d Cir. 1996) .........................................................................9

*Wilson v. Dynatone Publ'g Co.*,
892 F.3d 112 (2d Cir. 2018) ..................................................... 7, 14, 15, 22

*Wilson v. Dynatone Publ'g Co.*,
908 F.3d 845 (2d Cir. 2018) .........................................................................31

*Wozniak v. Warner Bros. Ent. Inc.*,
2024 U.S. Dist. LEXIS 55146 (S.D.N.Y. Mar. 27, 2024).................. 11, 21, 27

*Yurman Design, Inc. v. PAJ, Inc.*,
262 F.3d 101 (2d Cir. 2001) .........................................................................25

*Zuill v. Shanahan*,
80 F.3d 1366 (9th Cir. 1996) .............................................................. 14, 23

## Statutes & Other Authorities:

17 U.S.C. § 204 .............................................................................................9

17 U.S.C. § 204(a) .................................................................................9, 25

17 U.S.C. § 205 ...........................................................................................30

17 U.S.C. § 410(c) ............................................................................ 8, 29, 30

17 U.S.C. § 507(b) .............................................................................. 14, 15

Fed. R. App. P. 32(a)(7)(C) ........................................................................33

Fed. R. App. P. 56.1 ............................................................................19, 20

https://www.npr.org/sections/therecord/2012/06/06/154451399/
george-clinton-fights-for-his-right-to-funk............................................7

https://www.vulture.com/2015/05/george-clinton-on-aliens-and-lawsuits.html .......7

## STATEMENT OF THE ISSUES

1.     Whether the District Court correctly concluded that the copyright ownership counterclaims of Defendants-Appellants TufAmerica Inc. ("TufAmerica") and Kay Lovelace Taylor ("Ms. Taylor") (collectively "Appellants") are time-barred, granting summary judgment and dismissing them.

2.     Whether the District Court correctly denied Appellants' motion for reconsideration of the Court's order granting summary judgment and dismissing Appellants' counterclaims.

3.     Whether there are other grounds for this Court to affirm the District Court's grant of summary judgment and dismiss Appellants' claims.

4.     Whether the District Court correctly concluded that the copyright ownership claims of Plaintiffs-Appellees Bridgeport Music Inc. ("Bridgeport") and Westbound Records, Inc. ("Westbound") (collectively "Appellees") are not time-barred.

## PRELIMINARY STATEMENT

Music publisher Bridgeport Music, Inc., ("Bridgeport") and its sister record label Westbound Records, Inc., ("Westbound"), both owned by Armen Boladian ("Mr. Boladian"), now over 90 years old, had been openly exploiting and distributing the musical compositions and sound recordings involved in this action for more than 50 years, when, out of the blue, in December 2017, Appellees received a letter from TufAmerica claiming that it supposedly owned six musical compositions (the "Compositions")[1] authored or co-authored by non-party George Clinton ("Clinton"), and alleging that Appellees had supposedly been infringing on TufAmerica's purported rights in those Compositions. In January 2018, after Appellees requests for proof of ownership went unanswered but Appellants continued to press their claims, Appellees promptly filed a complaint in the Eastern District of Michigan, seeking a declaratory judgment that (1) Appellees did not infringe upon any copyright(s) allegedly owned by Appellants, (2) Appellees rightfully own the Compositions, and (3) Appellants do not have an interest in the copyrights to the Compositions. (A24). In February 2019, the action was transferred to the Southern District of New York. (A10). Then, in May 2019, Appellants asserted counterclaims

---

[1] The Compositions at issue are: (1) "The Victor" a/k/a "Baby I Owe You Something Good"; (2) "Good Old Music"; (3) "Let's Make It Last"; (4) "I'll Wait" a/k/a "I'll Stay"; (5) "Can You Get To That" a/k/a "What You Been Growing"; and (6) "The Goose (That Laid the Golden Egg)".

for copyright infringement, accounting, and a declaratory judgment that they owned the Compositions. Appellees moved for summary judgment on their claims and Appellants' counterclaims (19-1764, Doc. No. 99), and the District Court granted summary judgment as to Appellants' counterclaims based upon the statute of limitations, dismissing them, and denied it as to Appellees claims. (SPA1). The District Court later denied Appellants' motion for reconsideration of its Order dismissing Appellants' counterclaims (SPA33), and the parties stipulated that Appellees would conditionally dismiss their claims pending the result of this appeal (A22; A776).

The District Court correctly held that there were no genuine disputes of material fact regarding the accrual of Appellants' ownership counterclaims, and they are therefore time-barred. Thus, Appellants' counterclaims were properly dismissed.

There is no nice way to say this: TufAmerica is nothing short of an opportunist, attempting to shakedown Appellees, who have held and exploited their own personal property openly for over half a century without any claim from Appellants' purported predecessor. (A146, ¶76). As discussed below in more detail, Mr. Boladian and LeBaron Taylor were close friends in Detroit and knew each other well. (A138, ¶19). Mr. Taylor was first a music industry executive with Revilot Records ("Revilot") (A137, ¶11), and after its bankruptcy, became a high-profile DJ in Detroit. (A138, ¶20). Appellants claim that prior to signing with Bridgeport and

Westbound, George Clinton assigned an interest in the Compositions to Mr. Taylor, which assignment is unproduced in this action, and that this purported assignment trumps the assignments to Bridgeport. (Appellants Br. at 36). At no time during Mr. Taylor's life, however, did Mr. Taylor claim to own the Compositions (A147, ¶83; A148, ¶85-86), and he did not mention any ownership of any intellectual property in his will when he passed in 2000. (A150, ¶101). Mr. Taylor's widow, Ms. Taylor (also termed 'Oliver' in other documents), later found in her husband's belongings certain tapes of recordings of the Compositions, but without any written documentation regarding any interest in the Compositions, of which she advised TufAmerica. (A189, 193, 259). In 2011, TufAmerica was essentially quit claimed by Ms. Taylor a purported 50% interest in the Compositions for a grand total of only $6,500, and TufAmerica then purchased the remaining purported 50% interest in the form of a quit claim for another $6,000 in December 2019, after this suit was well under way. (A151, ¶111; A153, ¶125). It is clear that TufAmerica entered into the $6,500 quit claim agreement with Mr. Taylor's widow with the intent to turn that into millions by suing Appellees in this baseless lawsuit. Despite receiving this quit claim in 2011, however, TufAmerica did not do any research on ownership of the Compositions, nor raise any issue for more than six years, when they finally sent the December 2017 letter to Appellees, (A152, ¶ 116), and they did not assert any counterclaims regarding their purported interest until April 2019. (A153, ¶124).

When asked at his deposition why he waited so many years to do so, Aaron Fuchs ("Fuchs"), the principal of TufAmerica essentially said he was too busy. (A172). As discussed below, not only was the District Court correct in dismissing the Appellants' claims under the statute of limitations, but there are several other bases for dismissal, all raised in Appellees' Motion for Summary Judgment. (19-1764, Doc. No. 99).

It is undisputed that Mr. Taylor worked as a radio DJ in Detroit, and that Mr. Boladian gave him, and he actually played, the Westbound sound recordings embodying the Compositions on air in the 1970s. (A603, ¶20; A318, ¶17; SPA42). Mr. Taylor had direct and actual awareness that the Compositions were being exploited by someone else, and indeed he assisted in that exploitation. (A603, ¶20; SPA42-43). Appellees have openly exploited the Compositions for approximately 55 years, since the late 1960s/early 1970s, without any complaint or attack from Mr. Taylor, Ms. Taylor, or TufAmerica, until now. (A146, ¶76; A621, ¶76, 78; A623-24, ¶84). Additionally, Mr. Taylor was an experienced record executive, (A601, ¶11), contributing further to the fact that he was on notice that he was entitled to royalties that he was not receiving, triggering an ownership claim, and the three-year statute of limitations. (SPA28). Finally, had he owned the Compositions, Taylor would have received public performance royalties from BMI, but did not. (A148, ¶85). Bridgeport directly received performance royalties for the Compositions for over 50 years, with Mr. Taylor never complaining regarding Bridgeport's ownership and

royalty collection despite actual knowledge of Bridgeport's exploitation of the Compositions. (A138, ¶20; A147, ¶78; A153, ¶121). In light of these facts, summary judgment was appropriately granted.

Further, while TufAmerica stands in the shoes of Mr. Taylor as far as notice is concerned, it was independently on inquiry notice of Bridgeport's claim to ownership in 2011. Again, the following facts are all undisputed:

•  Ms. Taylor told TufAmerica that she did not have any paperwork confirming her ownership interest in the Compositions before agreeing to transfer her purported interest to TufAmerica in 2011 (A628-29, ¶104, 106);

•  After Ms. Taylor had already signed the 2011 transfer agreement with TufAmerica, she requested that TufAmerica remove from the agreement any representations and warranties that she had valid signed agreements showing transfer of title of the Compositions to her (A630-31, ¶113-14);

•  TufAmerica's principal, Mr. Fuchs, considered searching the copyright catalog for registrations at the time he purportedly purchased the 50% share of Ms. Taylor's interest in the Compositions, but he decided not to, electing to conduct a search a few years later (A630, ¶112; A171-72, at pgs. 35-36);

•  Bridgeport is well known in the industry to own the Clinton authored musical compositions, having successfully litigated ownership with Clinton over

them, and Clinton has been vocal about losing this battle (A141, ¶33-35; A271)[2]; and

•    Mr. Fuchs has substantial experience in the music industry as a record executive. (A630, ¶111).

Therefore, Appellants' ownership counterclaims accrued, and the statutory limitations period passed, years before this suit was initiated. In sum, the counterclaims are time-barred, and were properly dismissed.

This moots the issue of whether the District Court correctly determined that Appellees' claims are not time-barred, particularly since Appellees conditionally dismissed their claims, due to Appellants' counterclaims being time-barred and dismissed. Even so, whether Appellees' claims are time-barred does not affect whether Appellants' claims are time-barred. Both Appellants and their purported predecessor in interest had notice of competing ownership claims, which triggered the statute of limitations on those claims, which ran before this suit.[3] On the other

---

[2] *See, e.g.*, https://www.npr.org/sections/therecord/2012/06/06/154451399/george-clinton-fights-for-his-right-to-funk ("Clinton himself has filed multiple lawsuits against Bridgeport Music Inc…..."); https://www.vulture.com/2015/05/george-clinton-on-aliens-and-lawsuits.html (Clinton speaking out about multiple lost lawsuits).

[3] A claim for copyright ownership accrues "only once, when a reasonably diligent plaintiff would have been put on inquiry as to the existence of a right." *Wilson v. Dynatone Publ'g Co.*, 892 F.3d 112, 115 (2d Cir. 2018). Allowing a transfer of ownership to revive an already accrued and time-barred claim is entirely repugnant to this black letter rule. This was the correct analysis by the District Court, below. (SPA 29) (citing *Seven Arts Filmed Ent. Ltd. v. Content Media Corp. PLC*, 733 F.3d

hand, one month after Appellants sent Appellees the letter claiming ownership of the copyrights in the Compositions, Appellees filed suit. Appellants proffered no evidence that they or their purported predecessor in interest took any action which would be deemed to put Appellees on notice of a purported competing ownership claim, prior to Appellants' assertion of purported ownership in their letter in 2018. (SPA23). For the first time on appeal, Appellants contend that Taylor's 1967/1968 unpublished composition copyright registrations should have been deemed prima facie evidence supporting Appellants, and therefore put Appellees on notice of a purported ownership claim by Mr. Taylor, triggering the statute of limitations on Appellees' claims. (Appellants' Br. at 23). Appellants did not make the general argument that Appellees' claims were time-barred below, nor did they assert the new legal theory they do now on appeal, that the registrations were made before first publication of the work and are therefore prima facie evidence of the validity of the copyright, and that notice of the facts in the recorded document operate to trigger the statute of limitations against Appellees. *Id*. at 23-24. This argument is therefore waived. Furthermore, these arguments fail as Appellants did not submit any reliable evidence regarding the date of publication, a necessary part of the statute at issue, 17 U.S.C. §410(c), and had they, a mere registration does not suffice to put a

1251, 1257 (9th Cir. 2013) (repudiation of a predecessor in interest's claim of ownership more than three years prior barred successor's claim for copyright infringement)).

copyright owner on notice of a competing claim. Appellees' claims are therefore not time-barred.

There are also numerous other grounds to dismiss Appellants' claims. First, any claim that Clinton transferred his interest in the Compositions to Mr. Taylor cannot be considered. A transfer of copyright ownership "is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed." 17 U.S.C. § 204(a). Appellants allege that there was an agreement between Clinton and Taylor's company, Revilot Records, made in approximately 1965 (A513-19), however no such agreement was provided, and the only evidence put forth on this point is Mr. Clinton's testimony that there was a ***recording agreement*** with Revilot, but he also testified he does not know any of the terms of the agreement (A514; A149, ¶94), and he never assigned any musical compositions to Mr. Taylor or Mr. Taylor's entities. (A149, ¶95). This is clearly deficient in view of the writing requirement of §204.[4] Further, Bridgeport

---

[4] Although weighing the evidence is not proper at this stage, including making credibility determinations, *see Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996) (ruling on a motion for summary judgment, the district court must "eschew credibility assessments…."), Appellants nonetheless attempt to inject the improper and false opinion that Clinton is unbiased in his testimony, stating he is "a non-party with no vested interest in the outcome of this case," (Appellants' Br. at 47), despite his documented animosity towards Bridgeport and losing to Bridgeport in litigation over ownership of musical compositions. *See* (A141, ¶¶33-35). Furthermore, Clinton's testimony was inconsistent and nearly unintelligible at times, (19-1764, Doc. No. 101, at 4-6), a point acknowledged by the District Court. (SPA18). Clinton was clear he did not assign ownership of the Compositions to Mr. Taylor, (A149,

has always owned and had the right to exploit the Compositions through the various transfer agreements Clinton made with Bridgeport, and has done so openly and conspicuously for half a century. (19-1764, Doc. No. 99, at 20; A147, ¶76; A147, ¶78; A148, ¶84). Mr. Clinton lost at trial against Bridgeport over ownership of his musical compositions. (A141, ¶33-56).

Second, there was no valid transfer from Mr. Taylor to Ms. Taylor. When Mr. Taylor passed in 2000, he was survived by his wife, Ms. Taylor and his children. Mr. Taylor disposed of his estate by will, which does not mention the ownership of any intellectual property. (A150, ¶101-02; A301). Ms. Taylor noted that she found the physical tapes of sound recordings embodying the Compositions among Mr. Taylor's belongings, however, she expressly disclaimed possessing any paperwork about ownership of the Compositions or any documentation transferring ownership to her. (A189-190, 193, 259). TufAmerica knew this, and decided to purchase the Compositions anyway, allegedly without any due diligence regarding these Compositions, although it is well known Mr. Clinton wrote them and Bridgeport owns them. (A135-36, ¶2-3; A141, ¶34). Ms. Taylor thus did not have an interest in the Compositions to convey to TufAmerica, and therefore TufAmerica lacks

---

¶95), and instead testified he signed a recording agreement with Revilot Records, he does not know the terms of it, and Revilot filed bankruptcy in the late 1960's meaning the obligations in that contract were discharged. (A514; A149, ¶94; A137, ¶17).

standing as they do not possess any interest in the Compositions, and this Court should affirm on this ground in the alternative as well. (See SPA29, n.11); *Wozniak v. Warner Bros. Ent. Inc.*, 2024 U.S. Dist. LEXIS 55146, at *21 (S.D.N.Y. Mar. 27, 2024) ("'When a copyright was transferred from the original registered owner to another party,' that party 'faces the additional burden of proving valid chain of title because nothing in the registration certificate evidences his right to claim through the original copyright claimant.'") (quoting *Hartmann v. Amazon.com, Inc.*, No. 20 Civ. 4928 (PAE), 2021 U.S. Dist. LEXIS 157035, 2021 WL 3683510, at *4 (S.D.N.Y. Aug. 19, 2021)).

## LEGAL STANDARD

The review of the grant of Summary Judgment is reviewed de novo, construing all evidence in the light most favorable to the nonmoving party. *Latin Am. Music Co. v. Spanish Broad. Sys.*, 738 F. App'x 722, 723 (2d Cir. 2018); *Chassman v. Shipley*, 695 F. App'x 630, 632 (2d Cir. 2017) (citing *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir. 2003) (reviewing order granting summary judgment de novo); *Golden Pacific Bancorp v. F.D.I.C.*, 273 F.3d 509, 515 (2d Cir. 2001) (applying de novo review to statute-of-limitations ruling)). This Court may affirm the District Court's ruling on "any basis apparent in the record." *Chassman*, 695 F. App'x at 632 (citing *Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 405 (2d Cir. 2006)). However, "as a general rule," this Court "will not consider

arguments first made on appeal." *United States v. Wasylyshyn*, 979 F.3d 165, 172 (2d Cir. 2020) (citing *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 124 n.29 (2d Cir. 2005) ("The law in this Circuit is clear that where a party has shifted his position on appeal and advances arguments available but not pressed below, waiver will bar raising the issue on appeal.")).

## SUMMARY OF THE ARGUMENT

Appellees moved for summary judgment on their claims and Appellants' counterclaims, and the District Court granted summary judgment to Appellees as to Appellants' counterclaims being time-barred, and therefore dismissed the counterclaims. The court also concluded that Appellees' claims are not time-barred.

The District Court was correct in both of these conclusions. Appellants had notice of a competing ownership claim as early as the early 1970s, and TufAmerica did as well as late as 2011, either of which began the three-year statute of limitations to assert a claim for copyright ownership, which lapsed by the time this suit was filed, resulting in a time-bar. On the other hand, Appellees received notice by letter from TufAmerica of a competing ownership claim in December 2017, and filed suit one month later, well within the bounds of the three-year statute of limitations for asserting an ownership claim. Applying the law to the undisputed facts in this case, the District Court correctly granted summary judgment regarding Appellants' time-barred claims, and correctly concluded that Appellees' claims are not time-barred.

Additionally, TufAmerica cannot demonstrate chain of title in two fatal ways, which are also grounds for this Court to affirm the District Court: (1) TufAmerica cannot meet its burden to show that Clinton ever transferred his interest in the Compositions to Mr. Taylor, and (2) Ms. Taylor did not possess any interest in the Compositions to convey to Fuchs and TufAmerica, as Mr. Taylor's will did not mention any intellectual property, and any residuary estate went to his children. Therefore, TufAmerica lacks standing to bring any claims, as it has no cognizable property interest in the Compositions.

### ARGUMENT

## I. THE DISTRICT COURT CORRECTLY CONCLUDED APPELLANTS' COUNTERCLAIMS WERE TIME BARRED

If this Court affirms the District Court's grant of summary judgment in favor of Appellees on Appellants' counterclaims, this will moot the (waived) issue of whether the District Court correctly determined that Appellees' claims were not time-barred, given Appellees have conditionally dismissed their claims below pending the outcome of this appeal. Further, any finding on whether or not Appellees' claims are time-barred does not operate to negate the accrual of Appellants' independent counterclaims, and the running of their statutory limitations period. Therefore, the Court should begin its analysis with this issue. (*See* SPA51) (a "ruling that Defendants' counterclaims are time-barred would end the litigation…").

13

The Appellants' newly espoused (and waived) arguments notwithstanding, there is simply no error in the District Court's ruling. The undisputed record is clear that Appellants **_and_** their predecessors-in-interest were both on requisite notice for their copyright ownership claims to accrue, and expire, well before the limitations period ascribed in 17 U.S.C. § 507(b) ("No civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued."). While courts have found that there is a continuing accrual for claims of copyright infringement,[5] courts across the country have ubiquitously adopted a single accrual rule for claims of copyright ownership. *See Wilson*, 892 F.3d at 115; *Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC*, 477 F.3d 383, 390 (6th Cir. 2007); *Davis v. Meridian Films. Inc.*, 14 Fed. App'x 178, 181 (4th Cir. 2001); *Zuill v. Shanahan*, 80 F.3d 1366, 1369 (9th Cir. 1996). Applying this widely accepted principle, for which the case law is legion, to the undisputed record, the Appellants' claims are time-barred.

Reviewing the undisputed record, the District Court correctly concluded that Appellants' counterclaims were time-barred, finding that their counterclaims were premised upon a dispute of ownership; that these counterclaims accrued in the

---

[5] *See Petrella v. MGM*, 572 U.S. 663, 671 (2014) (It is widely recognized that the separate-accrual rule attends the copyright statute of limitations . . . In short, each infringing act starts a new limitations period."); *Bridgeport Music, Inc. v. Rhyme Syndicate Music*, 376 F.3d 615, 621 (6th Cir. 2004) (same).

14

1970s, or alternatively in 2011; and therefore, the Copyright Act's three-year statute of limitations ran on any ownership claims before the instant suit. (SPA27, 31).

Finally, Mr. Taylor's Will did not mention any ownership of any intellectual property, and Mr. Taylor had nothing to convey to TufAmerica.

### A.      Mr. Taylor Had Notice As To Appellees' Adverse Claims of Copyright Ownership.

"Section 507(b) of the Copyright Act states: 'No civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued.'" *Wilson*, 892 F.3d at 118. This includes ownership claims like those at issue in this case. *Id*. Under the Copyright Act, an ownership claim accrues only once, and this accrual can be triggered by a variety of events which would put a reasonably diligent plaintiff on notice. *Id*. "This Court has identified at least three types of events that can put a potential plaintiff on notice and thereby trigger the accrual of an ownership claim: public repudiation; private repudiation in communications between the parties; and implicit repudiation 'by conspicuously exploiting the copyright without paying royalties.'" *Id*. (quoting *Gary Friedrich Enters., LLC v. Marvel Characters, Inc.*, 716 F.3d 302, 317 (2d Cir. 2013)).

Here, Taylor was aware that the Compositions were being conspicuously exploited by Appellees and that he was not receiving royalties, and there is also no evidence that Taylor received any royalties related to his copyright registrations in the thirty-plus years prior to his passing. (SPA28). It is undisputed that Mr. Taylor

was an experienced music industry executive, and then worked as a radio DJ in Detroit. (A137, ¶11; A138, ¶20). He knew of and actually received and played the Westbound sound recordings embodying the Compositions on the air in the 1970s. (A603, ¶20; SPA42). Mr. Taylor knew that the Compositions were being exploited – and indeed materially engaged in the exploitation of the Compositions – and yet never received royalties for them. (*Id.*). As such, he clearly was on notice of his ownership claim after failing to receive royalties for their exploitation. *See Cole v. Blackwell Fuller Music Publ'g, LLC, No. 16-CV-7014 (VSB)*, 2018 U.S. Dist. LEXIS 168186, at *13 (S.D.N.Y. Sep. 28, 2018).[6]

The U.S. District Court for the Southern District of New York's analysis in *Cole* is compelling. There, the plaintiff was the road manager for the world-renowned musician Bob Marley. *Id.* at *1. The plaintiff wrote the lyrics for two Marley songs, "War" and "Natty Dread", and was led to believe that he was listed

---

[6] Citing *Mahan v. Roc Nation, LLC*, No. 14 CIV. 5075 LGS, 2015 U.S. Dist. LEXIS 49684, 2015 WL 1782095, at *4 (S.D.N.Y. Apr. 15, 2015) (holding that "the absence of any royalties sent to Plaintiff . . . gave him reason to know of his injury" where the works were a commercial success), *aff'd*, 634 F. App'x 329 (2d Cir. 2016); *Ortiz v. Guitian Bros. Music Inc.*, 2008 U.S. Dist. LEXIS 75455, at *3-4 (S.D.N.Y. Sep. 24, 2008) (holding that "[p]ublic distribution of the work at issue bearing copyright notices . . . which exclude the plaintiff . . . create[s] sufficient notice to begin the running of the statute of limitations" and that "Defendants' open distribution and exploitation of the [work] without paying any royalties to [plaintiff] should have put [plaintiff] on notice that Defendants rejected [plaintiff's] claim to copyright"); *Carell v. Shubert Org., Inc.*, 104 F. Supp. 2d 236, 249 (S.D.N.Y. 2000) (holding that "non-payment of royalties should have put [plaintiff] on notice of" repudiation of plaintiff's ownership rights).

on the copyright registrations for the two works, as he was listed on the sheet music as a co-author, but he saw other copies of sheet music for the works which did *not* list him as a co-author. *Id.* However, the publishing designee for the record label, which exploited the sound recordings of the works, listed itself on the copyright registrations for the sound recordings and musical compositions for both works as the copyright owner as a "work for hire". *Id.* at *2. During the entire relevant time, Mr. Cole continued to serve as Mr. Marley's road manager, and despite "numerous inquiries" Mr. Cole never received royalties for exploitations of the two works until 2002 when he started to receive ASCAP royalties for one of the works (despite never joining ASCAP). *Id.* at *2-3. The *Cole* Court granted the defendants' motion to dismiss, finding that Mr. Cole's claims accrued at the *earliest* in the 1970s when the works were publicly registered as works for hire and then exploited with his full knowledge (especially given his proximity to the exploitation as the road manager for Mr. Marley); and at the *latest* in 2002 when he received the statements from ASCAP. *Id.* at *13. Thus, his September 2016 lawsuit was well outside the three-year statutory limitations period. *Id.* Just like Mr. Cole, Mr. Taylor was directly involved in the exploitation of the Compositions at issue and *never* received royalties – thus, he had to have known of an adverse claim of ownership in the 1970s.

Even further, coupled with "the depth of [Mr. Taylor]'s experience in the music industry" as a record company executive, any assertion that he did not have

requisite notice of his claims "strains credulity" past its limit. *Mahan*, 2015 U.S. Dist. LEXIS 49684, at *9, *aff'd* 634 F. App'x 329. Mr. Taylor had experience in the music industry, had knowledge of Bridgeport's conspicuous exploitation of the Compositions, even going as far as assisting in it, and he knew that he was not receiving any royalties for such exploitation. *See id.* at *4 ("[T]he absence of any royalties sent to [litigant] also gave him reason to know of his injury."); *Cole*, 2018 U.S. Dist. LEXIS 168186, at *13 ("The fact that Plaintiff was not receiving royalties, despite the public distribution and exploitation of the Compositions in the 1970s and 1980s (and presumably in the decades since, leading up to the present), of which Plaintiff was aware, put him on notice of his claims.") (collecting cases). These circumstances constitute notice as a matter of law, and this notice resulted in the accrual of ownership claims for the Compositions, with the statutory period to assert the claims passing decades ago. Because Mr. Taylor's ownership claims to the Compositions are time-barred, and Appellants assert they are Taylor's successors in interest (19-1764, Doc No. 103, at 4), Appellants' ownership counterclaims for the Compositions are also time-barred. *See Seven Arts Filmed Ent. Ltd. v. Content Media Corp. PLC*, 733 F.3d 1251, 1257 (9th Cir. 2013) (repudiation of a predecessor in interest's claim of ownership more than three years prior barred successor's claim for copyright infringement). Further, when an "ownership claim is time-barred, and ownership is the dispositive issue, any attendant infringement claims must fail."

18

*Gary Friedrich Enters., LLC*, 716 F.3d at 316-17 (quoting *Kwan v. Schlein*, 634 F.3d 224, 230 (2d Cir. 2011)). Therefore, the District Court correctly granted summary judgment on this issue, and properly dismissed Appellants' counterclaims.

In its motion for reconsideration, and now on appeal, Appellants argue that they "recognize they could have more finely parsed the grammar of Appellees' Rule 56.1 statement" and wish to now dispute their admission due to "the hindsight afforded by the Court's interpretation of Boladian's testimony[.]" (Appellants' Br. at 40; 19-1764 Doc No. 113, at 10). Aside from the fundamental flaw of this logic, (which is essentially akin to asking to change their choice in a rock-paper-scissors game from rock to scissors after seeing that the opponent threw paper), this argument fails for two other reasons. First, Appellants did not raise this argument in their opposition to Appellees' motion for summary judgment, and "[i]n the Second Circuit, a party that fails to raise an argument in its opposition papers on a motion for summary judgment has waived that argument." *Phx. Light SF, Ltd. v. U.S. Bank Nat'l Ass'n*, No. 14-CV-10116 (VSB), 2020 U.S. Dist. LEXIS 144731, at *10 (S.D.N.Y. Aug. 12, 2020) (citing *Triodetic Inc. v. Statue of Liberty IV, LLC*, 582 Fed. Appx. 39, 40 (2d Cir. 2014) (summary order) ("Plaintiff never raised these arguments in its opposition to defendants' motion for summary judgment. Accordingly, these arguments were waived.")). And second, "[w]hile [Appellants] tr[y] to walk back these admissions to create genuine issues of material fact, [they]

may not do so." *McKinney v. City of Middletown*, 49 F.4th 730, 744 (2d Cir. 2022). "Parties are bound by their concessions in Rule 56.1 Statements." *Id*. (quoting *Brown v. N.Y. City Dep't of Educ.*, 755 F.3d 154, 158 (2d Cir. 2014) (alteration omitted)). "If [Appellants] did not agree with these particular factual assertions by the [Appellees], [they] should not have admitted them. Having responded '[Undisputed]' to these assertions, [Appellants] [are] bound by these admissions." *Id*. (quoting *Opal Fin. Grp., Inc. v. Opalesque, Ltd.*, No. 3:08-CV-1403, 2014 U.S. Dist. LEXIS 155434, 2014 WL 5587004, at *15 (D. Conn. Nov. 3, 2014)). "Having agreed on a set of facts, the parties, and this Court, must be bound by them; we are not free to pick and choose at will." *Id*. at 746 (quoting *Stanley Works v. FTC*, 469 F.2d 498, 506 (2d Cir. 1972)). Therefore, based on the undisputed facts, this Court should affirm the District Court.

### B.      TufAmerica Had Notice As To Appellees' Adverse Claims of Copyright Ownership.

TufAmerica also had notice of Appellees' adverse claims of ownership in 2011, when it purportedly purchased rights in the Compositions from Ms. Taylor. The District Court correctly applied the law of whether a "reasonably diligent plaintiff" would have been on "inquiry as to the existence of a right" regarding Bridgeport's long-standing ownership claim to the Compositions under the undisputed facts of the case. *Kwan*, 634 F.3d at 228; (SPA29).

Here, (1) Ms. Taylor explicitly communicated to TufAmerica and its principal, Fuchs, prior to selling them her purported rights in the Compositions, that she had no paperwork confirming an ownership interest in the Compositions, (2) *after* signing the agreement with TufAmerica, she instructed her attorneys to ask TufAmerica to remove any "representations and warranties" stating she had "valid signed agreements" showing transfer of any interest to her due to her concern that she had no documents of ownership, (3) Mr. Fuchs testified in his deposition that he wanted to search for copyright registrations before purchasing the interest in the Compositions, but allegedly decided not to, and only conducted a search a "few years" later, (4) Mr. Fuchs purchased the purported interest in several Compositions created by one of the most celebrated funk musicians of all time, including 'all worldwide copyrights, renewals, and/or other rights in certain musical works' for only $6,500 despite it being common industry knowledge that Mr. Clinton lost his fight with Bridgeport over ownership of musical compositions he wrote (A289), and additionally (5) Mr. Fuchs owned and operated a record label, and had substantial experience in the music industry. (A150-152, ¶¶103-14). Mr. Fuchs also did not read Mr. Taylor's will to ascertain any chain of title to, or cloud over, the Compositions, and whether Ms. Taylor actually possessed the property she purported to convey. *Id.* at ¶115; *Wozniak*, 2024 U.S. Dist. LEXIS 55146, at *21. Additionally, Appellants have submitted no evidence that TufAmerica ever received royalties in the six years

after its purchase in connection with the purported interest in the Compositions, which continued to be conspicuously exploited by Bridgeport as they had been for nearly 40 years previously, without paying royalties to Mr. or Mrs. Taylor, or TufAmerica. *Wilson*, 892 F.3d at 118. Under these circumstances, the Court correctly held that a reasonably diligent plaintiff had inquiry notice that another party might have claimed ownership of the Compositions. (SPA31).[7]

On appeal, Appellants argue that TufAmerica is a senior copyright holder, and that its registrations for unpublished musical compositions are *prima facie* evidence of the validity of the copyright and give notice of the facts in the recorded document. (Appellants' Br. at 34). They appear to argue then, that because Appellees possess registrations filed after Mr. Taylor's, that Appellees were on inquiry notice of Appellants' alleged ownership claims, and that this disallows Appellants to ever be on inquiry notice of a competing subsequent claim.[8] First, the District Court

---

[7] *Cf. Benak v. All. Capital Mgmt. L.P.*, 435 F.3d 396, 400-01 (3d Cir. 2006) ("Once defendants establish 'storm warnings' in pressing their affirmative defense, the burden shifts to the plaintiffs to show that they exercised reasonable due diligence and yet were unable to discover their injuries. Whether the plaintiffs exercised reasonable diligence is both a subjective and objective inquiry. If they have not shown such diligence, the knowledge they would have acquired through investigation is imputed to them.") (internal quotations and citations omitted).

[8] This tracks many of Appellants' arguments which go to whether Appellees had notice, and therefore, whether Appellees' ownership claims accrued. But like those arguments it ignores that this consideration is separate from, and does not operate to negate, whether Appellants' counterclaims accrued, and the statute of limitations period lapsed, barring their counterclaims.

concluded that Appellants' "senior copyright holder" arguments were not raised in their opposition to summary judgment, and it would not consider them in a motion for reconsideration. (SPA46); *see Davidson v. Scully*, 172 F. Supp. 2d 458, 461 (S.D.N.Y. 2001) (citing *Shrader v. CSX Transp. Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)). These arguments are likewise waived on appeal. *Triodetic Inc.*, 582 Fed. Appx. at 40 ("Plaintiff never raised these arguments in its opposition to defendants' motion for summary judgment. Accordingly, these arguments were waived."); *Phx. Light SF, Ltd.*, 2020 U.S. Dist. LEXIS 144731, at *10. Next, without waiving waiver, Appellants' argument nonetheless fails on the merits. Whether Appellees are junior or senior registrants,[9] Fuchs was on notice that another party could have claimed ownership of the compositions based on the undisputed facts, as noted above, and indeed a diligent plaintiff would have discovered multiple copyright registrations for the Compositions, including those for the published works, and their attendant ownership and history of exploitation by Bridgeport. Additionally, in the years after the 2011 transfer agreement, Bridgeport continued to conspicuously exploit the Compositions, as it had for more than forty (40) years previously, without paying royalties to TufAmerica.

---

[9] Courts equate the Copyright Act's statute of limitations as "something like adverse possession to copyright ownership." *Zuill*, 80 F.3d 1370. "An express or implicit ouster of a cotenant by an unequivocal act of ownership starts the adverse possession statute of limitations running." *Id*. The time of registration is irrelevant for notice of a competing claim.

In light of the undisputed facts, the District Court correctly concluded that Appellants' counterclaims are "time-barred under the Copyright Act's three-year statute of limitations." (SPA31).

## II. THE RECORD PROVIDES ALTERNATIVE GROUNDS TO AFFIRM THE DISTRICT COURT'S DISMISSAL OF APPELLANTS' COUNTERCLAIMS

In the alternative, this Court may affirm the District Court's opinion based on any grounds with support in the record. *AMTRAK v. McDonald*, 779 F.3d 97, 100 (2d Cir. 2015). Within the record, the fact that (1) Appellants do not have any evidence or documentation demonstrating the transfer of ownership in the Compositions from Clinton to Mr. Taylor or any of his entities, and (2) Ms. Taylor did not own the Compositions which she purported to convey to TufAmerica each provide, on their own, independent grounds to affirm. In both instances, in the absence of any documentation and evidence, TufAmerica's "chain of title is missing a crucial link and therefore [TufAmerica] has failed to establish by a preponderance of the evidence that it holds a valid copyright. Because at trial [TufAmerica] would bear the burden of proving that it holds a valid copyright, summary judgment for the [Appellees] is appropriate on [TufAmerica]'s copyright claims." *Int'l Media Films, Inc. v. Lucas Entm't, Inc.*, 703 F. Supp. 2d 456, 464 (S.D.N.Y. 2010).

Indeed, a plaintiff or counter-plaintiff "bears the burden of proving both that the plaintiff owns a valid copyright and that the defendants have infringed that

copyright." *Id*. at 462 (citing *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 108-09 (2d Cir. 2001)). Where a crucial link in the chain of title is missing, copyright ownership claims must fail. *Id*. at 464. Appellants allege that Clinton granted interests in the Compositions to Mr. Taylor at some point in time prior to Clinton's grant to Bridgeport. (Appellants' Br. at 47). However, Appellants cannot produce any writing or documentation to support their supposition that Mr. Taylor received any interest in the Compositions. Additionally, the only evidence Appellants provide is Clinton's testimony during his deposition, in which he stated he did not know where the agreement is or any of its terms, and that he never assigned any musical compositions to Mr. Taylor or Mr. Taylor's entities. (A514; A149, ¶95). As noted by Appellees in the District Court, to be kind, Mr. Clinton's testimony was at times incomprehensible (19-1764, Doc. No. 101, at 4-6), as the District Court observed (SPA18), but he was clear he did not assign ownership of the Compositions to Mr. Taylor, (A149, ¶95), and he never assigned any musical compositions to Mr. Taylor or Mr. Taylor's entities. He only acknowledges a recording agreement with Revilot, but does not know the terms of it. (A514; A149, ¶94). As there is no evidence to support Appellants that Clinton transferred his interest in the compositions to Mr. Taylor under §204(a)'s writing requirement, as a matter of law, TufAmerica's claims must fail, as they could not have received an interest in the Compositions from Mr. Taylor's alleged successor in interest, Ms. Taylor, when he had no interest to convey.

Further, again, for over fifty years Bridgeport has owned and exploited the Compositions through its own agreements with Clinton and won a federal court lawsuit over ownership of Mr. Clinton's authored compositions. (A141, ¶37; A142, ¶43; A143, ¶50; A144, ¶57; A145, ¶65; A146, ¶71). Lastly, Mr. Taylor never received royalties related to the compositions nor did he complain that he did not, despite notice of their exploitation by Bridgeport, until his death in 2000. (A138, ¶20; A147, ¶ 78; A153, ¶121). This Court should therefore affirm based on TufAmerica's lack of standing, as it does not possess any interest in the Compositions at issue in this case. *See Cortner v. Israel*, 732 F.2d 267, 270 (2d Cir. 1984) ("If [litigant] retained no interest in the work the dismissal of their infringement claim must, of course, be affirmed.").

Second, TufAmerica lacks standing as Ms. Taylor did not have any interest in the Compositions to convey to TufAmerica. Indeed, upon his death in 2000, Mr. Taylor disposed of his estate by will, which does not mention the Compositions, or any intellectual property for that matter, and which directs his residuary estate to his children. (A150, ¶101-02). "In the construction of wills in New York it is the function of the court to ascertain the intent and purpose of the testator as expressed in his will and to give effect to that intent and purpose insofar as it is not contrary to our laws and public policy." *Estate of Tilyou v. Commissioner*, 470 F.2d 693, 697 (2d Cir. 1972) (quoting *In re Herrmann's Estate*, 82 N.Y.S. 2d 888 (Surr. Ct. 1948)). "To

interpret intent we may consider the circumstances known to him when the will was made." *Id*. (quoting *In re Neil*, 144 N.E. 481 (N.Y. 1924)). Additionally, "courts will not read terms into a will that are not otherwise implied…." *Derblom v. Archdiocese of Hartford*, 247 A.3d 600, 610 (Conn. Ct. App. 2021). This analysis is based off of the will's "four corners to arrive at the true intention of the testator." *Empire Tr. Co. v. United States*, 226 F. Supp. 623, 629 (S.D.N.Y. 1963) (citing *Hoffman v. McGinnes*, 277 F.2d 598, 602 (3d Cir. 1960)). And "[t]hese intentions are to be collected from his words…." *Boal v. Metro. Museum of Art*, 298 F. 894, 901 (2d Cir. 1924). Here, because Mr. Taylor's will is silent regarding the Compositions, if they were his property, they would pass to the residuary estate.[10] Even if Mr. Taylor had any interest in any intellectual property, which he did not mention in his Will, it would not have passed to Ms. Taylor upon his death. Because of this fact, she did not have an interest in the Compositions to convey to TufAmerica, and therefore TufAmerica lacks standing, as they do not possess any interest in the Compositions, and this Court should affirm on this ground in the alternative as well. (*See* SPA29, n.11); *Wozniak*, 2024 U.S. Dist. LEXIS 55146, at *21 ("'When a copyright was transferred from the original registered owner to another party,' that party 'faces the

---

[10] *See Avery v. Estate of Avery*, 192 A.3d 1250, 1257 (Vt. 2018) ("[W]e must construe what [the] testator said in the light of the recognized rules of construction, and not by speculation as to what he would have intended had he foreseen the present situation.") (internal quotations omitted).

additional burden of proving valid chain of title because nothing in the registration certificate evidences his right to claim through the original copyright claimant.'") (quoting *Hartmann*, 2021 U.S. Dist. LEXIS 157035, 2021 WL 3683510, at *4)); *Cortner*, 732 F.2d at 270.

### III. THE DISTRICT COURT CORRECTLY CONCLUDED APPELLEES' CLAIMS WERE TIMELY[11]

Appellees received notice that Appellants were asserting ownership claims to the Compositions by letter from TufAmerica in December 2017, thereby accruing Appellees' ownership claims and beginning the three-year statutory limitations period. One month later, Appellees filed suit in this case, well within the statutory period for asserting ownership claims. Therefore, the District Court correctly concluded that Appellees' claims are timely.

Appellants assert for the first time on appeal the argument that Appellees' claims are time-barred,[12] and with that a new legal theory that the 1967/1968

---

[11] Appellees again note that should the Court conclude Appellants' claims are time-barred, or if the Court concludes Appellants' claims should be dismissed on alternative grounds, the issue of whether Appellees' claims are time-barred is mooted, as Appellees conditionally dismissed their claims below pending the outcome of this appeal.

[12] Appellants did not argue that Appellees' claims were time-barred for any reason in their summary judgment opposition motion, nor in their motion for reconsideration; while making arguments in their summary judgment opposition related to why *their* claims should not be time-barred, Appellants averted in a perfunctory manner, unsupported by citation to the record or case law, that "one can argue" that Appellees' claims should be the ones being examined as stale. (19-1764,

28

copyright registrations operated to begin accrual of an ownership claim for Bridgeport. These arguments are waived. *Triodetic Inc.*, 582 Fed. Appx. at 40; *Palmieri v. Lynch*, 392 F.3d 73, 87 (2d Cir. 2004). However, without abandoning this argument regarding waiver, Appellees address the merits.

Appellants argue that Taylor's 1967/1968 unpublished composition copyright registrations should have been deemed *prima facie* evidence supporting Appellants, and that this would be a notice of the facts in the recorded documents, which would therefore purportedly trigger the statute of limitations against Appellees. (Appellants' Br. at 23-24). Appellants state that the District Court came to an erroneous conclusion regarding the 1967/1968 registrations by misapplying 17 U.S.C §410(c) (Appellants' Br. at 20), which states:

> In any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate. The evidentiary weight to be accorded the certificate of a registration made thereafter shall be within the discretion of the court.

---

Doc. No. 103, at 2, 17-19) (stated under the heading "Disputed Questions of Material Fact Also Preclude Granting Summary Judgment Based on Plaintiffs' Statute of Limitations Argument"). However, Appellants made no effort to argue or develop this naked proposition. *See United States v. All Right*, 2012 U.S. Dist. LEXIS 127835, at *10 (S.D.N.Y. Sep. 7, 2012) ("It is well settled that 'issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.'") (quoting *Tolbert v. Queens Coll.*, 242 F.3d 58, 75 (2d Cir. 2001)). Though the District Court attempted to assist Appellants, and somewhat made an argument for them (which is also different than the argument now raised by Appellants on appeal), because Appellants did not make the argument below, it is waived for the purposes of appeal. *Triodetic Inc.*, 582 Fed. Appx. at 40.

Appellants assert that the District Court overlooked the words "before or" in the statute.[13] They also assert that because the 1967/1968 registrations are for 'unpublished' musical compositions, *ipso facto*, they must have been filed 'before' publication, and are therefore *prima facie* evidence that gives notice of the facts in the document. *Id*. at 23; *see* 17 U.S.C. § 205.

However, the District Court found that no presumption of validity exists in the registrations under §410(c) because Appellants "have not submitted reliable evidence concerning the date of first publication" (SPA15),[14] a necessary element of the statute, and a "'party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment. Mere conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist.'" (SPA12) (quoting *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (quoting *Fletcher v. Atex Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995) (alterations omitted)). Additionally, assuming *arguendo* that under §410(c) the 1967/1968 registrations have *prima facie* value, "[w]hile relevant, a

---

[13]   The court did not ignore the words 'before or': for instance, when evaluating the Appellees registrations the court stated that Appellees had "not offered evidence sufficient to demonstrate that their copyright registrations were filed before or within five years" of publication in reaching a decision. (SPA15).

[14] And now on appeal Appellants admit that they did not, and they could not have "assert[ed] that the Compositions were 'published' as defined by the Copyright Act…." (Appellants' Br. at 21).

copyright registration alone is not enough to put a plaintiff on notice of an ownership dispute." *Ferrarini v. Irgit*, 2021 U.S. Dist. LEXIS 29619, at *11 (S.D.N.Y. Feb. 17, 2021) (collecting cases); *see Wilson v. Dynatone Publ'g Co.*, 908 F.3d 843, 845 (2d Cir. 2018) (*Wilson II*) ("[W]e have never held that mere registration, without more, is enough to put a reasonably diligent copyright owner on notice of an adverse claim."); (SPA25-26).[15] The Appellants do not point to 'something more', and indeed the Compositions have only been conspicuously exploited by, and their attendant royalties paid to, Bridgeport, over the life of the Compositions. Therefore, the District Court correctly concluded that Appellees' claims are not time-barred.

---

[15] Additionally, regarding Mr. Taylor's registrations, "[i]n the late 1960s and early 1970s, the Copyright Office was very liberal in accepting documents for recordation and did not make any inquiry into the validity or legal effect of a document." *Jim Henson Prods. v. John T. Brady & Assocs.*, 92 Civ. 5115 (LAP), 1997 U.S. Dist. LEXIS 22878, at *59 (S.D.N.Y. Oct. 6, 1997).

## <u>CONCLUSION</u>

This Court should affirm the District Court's grant of summary judgment and dismissal of Appellants' counterclaims, and, if not mooted, its conclusion that Appellees' claims are not time-barred.

April 25, 2024

Respectfully submitted,
<u>/s/ Richard S. Busch</u>
Richard S. Busch
King & Ballow
26 Century Blvd, Suite NT700
Nashville, TN 37214
(615)259-3456
rbusch@kingballow.com

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(C) and Circuit Rule 32(a), I hereby certify that the foregoing brief was produced using the Times New Roman 14-point typeface and contains 7,797 words.

April 25, 2024

Respectfully submitted,
/s/ Richard S. Busch
Richard S. Busch
King & Ballow
26 Century Blvd, Suite NT700
Nashville, TN 37214
(615)259-3456
rbusch@kingballow.com